UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNABELLE FISCHER,

                        Plaintiff,

        -against-                      08 Civ. 7707 (RJH)(KNF)

**<u>MEMORANDUM OPINION
AND ORDER</u>**

OBG CAMERON BANFILL LLP,
LAWRENCE W. ROSE,
ANDREW BANFILL AND JANE DOE,

                        Defendants.

Richard J. Holwell, District Judge:

       Plaintiff Annabelle Fischer filed this action on September 3, 2008 against defendants OBG Cameron Banfill LLP ("OBG"), Lawrence W. Rose ("Rose"), Andrew Banfill ("Banfill"), and unidentified OBG employee Jane Doe, seeking damages based on multiple causes of action, including, among other things, libel *per se* and breach of contract. On October 16, 2009, this Court granted plaintiff's motion for default judgment against defendants OBG and Banfill, and dismissed plaintiff's action against defendant Rose. This Court then referred the action to Magistrate Judge Kevin Fox in an order dated November 9, 2009 to conduct an inquest and report and recommend the amount of damages that should be awarded to the plaintiff.

       In his report and recommendation (the "Report"), dated August 24, 2010, Magistrate Judge Fox concluded that the plaintiff should be awarded $261.27 in compensatory damages for libel *per se* and breach of contract and $424.40 for costs incurred in connection with this action against OBG only. Plaintiff filed timely objections to the Report on five grounds, contending

1

that: (1) Banfill should have been held personally liable; (2) the Report erred by not specifically discussing general damages; (3) the Report erred by failing to give a larger compensatory damages award; (4) punitive damages should have been awarded; and (5) the amount of unpaid salary awarded was insufficient. For the reasons that follow, the Court adopts the Report, except as to punitive damages and Banfill's personal liability on the libel claim.

## BACKGROUND

The factual background and relevant procedural history are set forth in the Report. The Court adopts the findings of fact as set forth in the Report and assumes familiarity with the facts as stated therein.

## DISCUSSION

### I.   Standard of Review

A district court may designate a magistrate judge to hear and determine certain motions and to submit to the court proposed findings of fact and a recommendation as to the disposition of the motions. *See* 28 U.S.C. § 636(b)(1). Within fourteen days of service of the recommendation, any party may file written objections to the magistrate judge's report. *Id.* In evaluating the report, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

The district court adopts a Magistrate Judge's report and recommendation when no clear error appears on the face of the record. *See Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). If a party objects to the report and recommendation, however, the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see, e.g., Jackson v. Goord*, 664 F. Supp. 2d 307, 310 (S.D.N.Y. 2009). "If, however, the party makes only

2

conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007) (citations omitted).

## II. Plaintiff's Objections

### A. Banfill's Personal Liability

Fischer's first objection to the Report argues that Magistrate Judge Fox erred by failing to hold Banfill personally liable on plaintiff's claims, instead awarding damages against only OBG, Banfill's limited liability partnership. Plaintiff claims that it was error not to hold Banfill personally liable, since Banfill was OBG's sole equity partner and instructed Rose to draft the libelous letter. (Pl.'s Objections 2–3.)

To the extent it relies on piercing the corporate veil, plaintiff's objection is unavailing. In New York, piercing the corporate veil "requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Matter of Morris v. New York State Dep't of Taxation and Finance*, 623 N.E.2d 1157, 1160–61 (1993) (citations omitted). Here, even if Banfill's status as sole equity partner satisfied the first prong of the test, plaintiff "fell far short of meeting [her] burden on the second critical point: that [defendant], through his domination, misused the corporate form for his personal ends so as to commit a wrong or injustice." *Id.* at 1161. Plaintiff has made no showing in this case that there was anything improper in the formation of OBG for its stated purpose of practicing law, or that it was merely a sham meant to carry out the personal business of Banfill, or that the corporate form was misused in any fashion to commit the libel. Therefore, piercing the corporate veil would be inappropriate here.

The Report did err, however, in relying on the fact that it was Rose, not Banfill, who actually published the letter to absolve Banfill of liability. "[U]nder New York law, 'all who take part in the procurement, composition and publication of a libel are responsible in law and equally so.'" *Pisani v. Staten Island University Hospital*, 440 F. Supp. 2d 168, 179 (E.D.N.Y. 2006) (quoting *Treppel v. Biovail Corp.*, No. 03 Civ. 3002 (PKL), 2005 WL 2086339, at *3 (S.D.N.Y. Aug. 30, 2005); *see also Afshari v. Barer,* 769 N.Y.S.2d 687, 689 (N.Y. App. Term 2003) ("Plaintiff . . . admitted participation in the preparation of the letter, and while not a signatory thereto, she was properly held jointly liable for the defamation."). Here, Rose's affidavit asserts that Banfill directed him to compose the libelous letter, giving him a knowing participatory role in the preparation of the libelous letter, and therefore Banfill is jointly liable on the libel claim.

### B. General Damages

Second, plaintiff argues that Magistrate Judge Fox committed error by failing to address the issue of "general damages," asserting that "[i]t is settled law that a *per se* plaintiff may recover general or presumed damages and is not limited to proof of actual damages." (Pl.'s Objections 4.) Plaintiff misapprehends the meaning of general damages. General damages are "compensatory damages for harm that so frequently results from the tort for which a party has sued that the harm is reasonably expected and need not be alleged or proved." *Black's Law Dictionary* 446 (9th ed. 2009). And actual damages are "[a]lso termed *compensatory damages*; *tangible damages*; *real damages*." *Id.* at 445. Plaintiff's argument sets up a false dichotomy between general and actual damages; general damages are to be distinguished from special, not actual damages. The presumption of general damages in libel *per se* cases does not mean that the court can award substantial damages without plaintiff having adduced any evidence; it

merely means that special damages need not be pleaded for the *per se* claim to be actionable. *Compare Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (noting that where "an action for defamation *per se* lies, . . . general damages are presumed") *with Pelc v. Berg*, 893 N.Y.S.2d 404, 406 (N.Y. App. Div. 4th Dep't 2009) ("[D]efendants have alleged only general damages, and the pleading of special damages is a prerequisite for slander of title." (citations omitted)). "Moreover, the *amount* of damages will always be in issue . . . , and evidence must be introduced to demonstrate that the award should be more than nominal." *Davis v. Ross*, 107 F.R.D. 326, 330 (S.D.N.Y. 1985). Therefore, the Report's discussion of the amount of compensatory damages to be awarded in the instant case suffices to meet plaintiff's concern, and plaintiff's second objection retains no merit. (Report at 8–10.)

### C. Compensatory Damages Award

Third, plaintiff objects that the Report faults her "for not presenting other evidence linking damages . . . with reasonable relation to the wrong" other than a personal affidavit because "this case is in that class where it is impossible to marshal concrete evidence that but for the libelous letter Ms. Fischer would have been hired." (Pl.'s Objections 6–7.) Plaintiff's third objection gives no legal reason or citation to authority for its contention that this Court should award additional damages in the absence of evidence. This Court cannot marshal evidence on behalf of the plaintiff, nor will it engage in speculation to modify the Report's recommendation as to the amount of compensatory damages.

### D. Punitive Damages

Fourth, plaintiff objects to the Report's recommendation that no punitive damages be awarded, asserting that "there is evidence of malice on Banfill's part which the Magistrate neglected without recognizing its significance." (Pl.'s Objections 8.) The Report found that,

under New York law, punitive damages in a libel case may be awarded when a publication is made with actual malice, which includes reckless or careless publishing, as well as ill-will. (Report at 10.) Magistrate Judge Fox, noting that punitive damages should "bear some reasonable relation to the harm done and the flagrancy of the conduct causing it," found that the evidence of harm was scant and the flagrancy of the conduct was unclear because "nothing in the record establishes a connection between Banfill's crude comments and the libelous letter sent to the INS, by Rose." (Report at 11.) The Report, therefore, awarded no punitive damages. Plaintiff asserts, however, that because Banfill was the "prime mover" of the defamatory letter, consideration of his comments is appropriate in deciding whether to award punitive damages. (Pl.'s Objections at 9.)

  As a threshold matter, the Report erred in its recitation of the standard for the award of punitive damages in a libel action in New York. In New York, "[a]ctual malice, as defined by *New York Times Co. v. Sullivan*, is insufficient by itself to justify an award of punitive damages, because that malice focuses on the defendant's state of mind in relation to the truth or falsity of the published information." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 184 (2d Cir. 2000) (quoting *Prozeralik v. Capital Cities Communications*, 626 N.E.2d 34, 42 (N.Y. 1993)). Rather, plaintiff must establish common law malice, showing "by a preponderance of the evidence that the libelous statements were made out of 'hatred, ill will, [or] spite.'" *Id.* In such cases, punitive damages "punish a person for outrageous conduct which is malicious, wanton, reckless, or in willful disregard of another's rights." *Id.*

  The Report found that one factor weighing against award of punitive damages in this case was that there was little evidence of actual harm. (Report at 11.) Although "punitive damages should bear some reasonable relationship to the harm done and the flagrancy of the conduct

causing it," *I.H.P. Corp. v. 210 Cent. Park South Corp.*, 228 N.Y.S.2d 883, 889 (N.Y. App. Div. 1st Dept. 1962), an award in a defamation case of nominal compensatory damages and substantial punitive damages is within the court's province under the applicable New York law. *See Goldwater v. Ginzburg*, 414 F.2d 324, 340 (2d Cir. 1969); *see also Celle*, 209 F.3d at 191 (awarding $1 in compensatory damages and $10,000 in punitive damages).  The purpose in awarding such damages is both to deter the person who made the libelous statement from doing so again and to warn others not to engage in such conduct.  *See Wachs v. Winter*, 569 F. Supp. 1438, 1444 (E.D.N.Y. 1983).

Here, the Court finds that some punitive damages are appropriate.  The Report did not consider Banfill's e-mails in its analysis of punitive damages because their connection to the libel in this case was indirect, rendering the "flagrancy of the conduct" causing the libel unclear. (Report at 11.)  The Report, however, also found Banfill not personally liable for the libel, which the Court finds erroneous for the reasons stated above.  Under New York law, "[c]ommon law malice is established by examining all of the relevant circumstances surrounding the dispute, including any rivalries and earlier disputes between the parties so long as they are not too remote."  *Celle*, 209 F.3d at 184.  In this case, Banfill's e-mail exchange evinced his animus toward Fischer and intent to affect her ability to stay in the United States.  Because the exchange happened just ten days before Fischer's termination, it is close enough in time to the libel at issue in this case to indicate ill will on Banfill's part.  As for the libelous letter itself, Banfill directed that the libelous language be inserted in the letter to Immigration and Naturalization Services ("INS") with the knowledge that it could affect Fischer's immigration status, future employment prospects, and reputation as an attorney in the United States.  Such conduct is the type of "willful disregard of another's rights" that punitive damages are meant to address, and therefore

7

such damages are appropriate this case.  *Cf. Woodruff v. Ohman*, 166 Fed. Appx. 212, 217–218 (6th Cir. 2006) (affirming district court's award of punitive damages under Tennessee's "actual malice" standard because defendant put plaintiff's "professional and immigration status at great risk for questionable motives" when he wrote letters to the INS and Canadian authorities recommending against extending the defendant's fellowship at an American university).  Accordingly, the Court awards Fischer $7,500 in punitive damages.

### E.  Breach of Contract Damages

Finally, plaintiff objects that the Report does not recommend a full award of wages allegedly owed for the period from August 1, 2008 to August 18, 2008.  The Report awarded wages only for the 9.8 hours Fischer worked on August 18, 2008 because Fischer submitted only the one timesheet for that date.  (Report at 15.)  Plaintiff now "urge[s] that the Court 'receive further evidence'" and award wages for the entire period.  (Pl.'s Objections 11.)  Objections to a magistrate judge's report and recommendation, however, are not opportunities to receive "a 'second bite at the apple' . . . , as the goal of the federal statute providing for the assignment of cases to magistrates is to increas[e] the overall efficiency of the federal judiciary."  *United States v. Gardin*, 451 F. Supp. 2d 504, 507 (W.D.N.Y. 2006) (internal quotation marks and citations omitted).  Plaintiff had the opportunity to submit the relevant timesheets to Magistrate Judge Fox, and was on notice that she was to file "proposed findings of fact and conclusions of law, setting forth her proof of damages, costs of this action, including any applicable interest and/or attorney's fees . . . ."[1]  (Order of Magistrate Judge Fox ¶ 2, December 7, 2009.)  The plaintiff's objections do not give her a second chance at proving the damages that were the very subject of

---

[1] To the extent that plaintiff argues that she did not do so because she was expecting a hearing, Magistrate Judge Fox addressed that possibility and warned that "[i]f no request for a hearing is made by any party within 45 days of service of the plaintiff's inquest submissions, I shall make my decision based solely upon the memoranda and affidavits, without any oral argument."  (Order of Magistrate Judge Fox ¶ 6, December 7, 2009.)

the magistrate judge's inquest, and therefore this Court finds no error in the Report's recommendation on damages for unpaid wages.

## CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Fox's Report and Recommendation, except as to the issues of Banfill's personal liability and of punitive damages. The Court awards the following damages: (1) $1 in compensatory damages and $7,500 in punitive damages for libel *per se*, for which OBG and Banfill are jointly liable; (2) $260.27, in compensatory damages for breach of contract, for which OBG is liable; and (3) $424.40, for costs incurred in connection with this action, for which OBG and Banfill are jointly liable. The plaintiff is also awarded prejudgment interest, as calculated by the Clerk of Court, commencing from August 18, 2008, at the rate of nine percent per annum and post-judgment interest, to be calculated by the Clerk of Court, pursuant to 28 U.S.C. § 1961(a), commencing from the date of judgment. The Clerk of the Court is requested to close this case.

SO ORDERED.

Dated: New York, New York
September 24, 2010

Richard J. Holwell
United States District Judge